UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAROL KELLY,

    Plaintiff,

  v.             17-CV-1047
                 DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

    On October 17, 2017, the plaintiff, Carol Kelly, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 21, 2018, Kelly moved for judgment on the pleadings, Docket Item 13; on January 22, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; on January 24, 2019, the Commissioner amended that motion, Docket Item 17; and on February 12, 2019, Kelly replied, Docket Item 18.

    For the reasons stated below, this Court grants Kelly's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

**I.  PROCEDURAL HISTORY**

On December 10, 2013, Kelly applied for Supplemental Security Income benefits. Docket Item 7 at 282.  She claimed that she had been disabled since February 2, 2009, due to a workplace injury.  *Id.*

On February 28, 2014, Kelly received notice that her application was denied because she was not disabled under the Act.  *Id.* at 211.  She requested a hearing before an administrative law judge ("ALJ"), *id.* at 219, which was held on April 8, 2016, *id.* at 147.  The ALJ then issued a decision on May 11, 2016, confirming the finding that Kelly was not disabled.  *Id.* at 156.  Kelly appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  *Id.* at 5.

**II.  THE ALJ'S DECISION**

In denying Kelly's application, the ALJ evaluated Kelly's claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations.  § 404.1520(a)(4)(iii).  If the

2

claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ determined that Kelly had not engaged in substantial gainful activity since her alleged disability onset date. Docket Item 7 at 149. At step two, the ALJ found that Kelly had several severe impairments: cervical stenosis, degenerative disc disease, and headaches. *Id.* At step three, the ALJ determined that

Kelly's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 150. At step four, the ALJ reached the following RFC:

> [T]he claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb stairs/ramps, stoop, kneel, balance, and reach overhead bilaterally; never crouch, crawl or climb ladders/ropes/scaffolds; and must avoid concentrated hazards including uneven terrain, unprotected heights, and dangerous moving machinery.

*Id.* At step five, the ALJ found that Kelly is capable of performing a significant number of jobs in the national economy, such as cafeteria attendant or laundry sorter.

## **LEGAL STANDARDS**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

4

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Kelly objects to the ALJ's RFC determination. Docket Item 13-1 at 1. She specifically argues that the ALJ erred by "rejecting the partial disability findings of" three treating physicians and relying on the ALJ's lay opinion—rather than obtaining another medical opinion—to reach the RFC. *Id.* at 11, 13. Kelly also argues that the ALJ failed to properly evaluate her pain syndrome and evaluate her credibility. *Id.* at 15. This Court finds that the ALJ procedurally erred by assigning little weight to several treating source opinions without explicitly addressing the permissible reasons for doing so.

### II. ANALYSIS

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). A treating source is an acceptable medical source who has an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 416.927(a)(2).

An ALJ generally should give greater weight to the medical opinions of treating physicians because those medical professionals are most able to provide a detailed, longitudinal picture of medical impairments. *See* 40 C.F.R. § 404.1527(c)(2). In fact, a treating physician's opinion might well be entitled to controlling weight. *See, e.g., Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003).

In evaluating whether a treating source's opinion will be given controlling weight, the ALJ must first consider whether the opinion is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." § 404.1527(c)(2). If the ALJ decides that the opinion is not entitled to controlling weight, the ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Pilarski v. Comm'r of Soc. Sec.*, 2014 WL 4923994, at *2 (W.D.N.Y. Sep. 30, 2014) (internal quotations and alterations omitted). In fact, the ALJ must "give good reasons" for the weight given to treating source opinions. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion . . . .").

"To override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotations and alterations omitted). These are the so-called "*Burgess* factors" from

6

*Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. May 29, 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ assigned "[l]imited weight" to the opinions of three treating sources—Andrew Cappuccino, M.D.; Leonard Kaplan, M.D.; and Nikita Dave, M.D.[1]—without "explicitly apply[ing]" the appropriate factors. *See Estrella*, 925 F.3d at 96. Instead, she assigned them limited weight because "they used terms such as 'moderate' or '33% temporary impairment,' which are terms used by Worker's Compensation and are not particularly probative of [the Commissioner's] standards." Docket Item 7 at 154.[2] So the ALJ addressed Kelly's treatment by these physicians, but

---

[1] Kelly was insured under the Act through December 31, 2014, and therefore had to show evidence of a disability before that date. Several, though not all, of Dr. Dave's treatment notes are from visits after that date. *Compare* Docket Item 7 at 587-91 *with id.* at 596-603. But that does not make Dr. Dave's treatment notes and opinions any less relevant. *See, e.g.*, *Hurdis v. Colvin*, 2014 WL 6982298, at *10 (Dec. 10, 2014) ("The ALJ's apparent failure to even consider pre-[disability onset date] evidence and post-[insured status date] evidence . . . would arguably mandate remand of this case on that ground alone . . . ."); *Rasmussen v. Astrue*, 2011 WL 2090839, at *2 (D. Utah May 26, 2011) ("diagnosis today could be a sign of limited intelligence and mental illness in the past and should be considered"); *Hartfiel v. Apfel*, 192 F.Supp.2d 41, 44 (W.D.N.Y 2001) (considering treating physician's diagnoses of disability that post-dated insured status).

[2] While "moderate" or "33% temporary impairment," *id.*, may not translate perfectly into Social Security jargon, such assessments certainly shed *some* light on what the ALJ must decide—especially when those assessments were made by the claimant's treating physicians. Before she simply discounted these opinions because they were rendered for no-fault purposes and therefore used no-fault terminology, it was incumbent on the ALJ at least to recontact the physicians to develop the record— perhaps by asking them to adapt the language of their opinions to the Social Security context. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Ligon v. Astrue*, 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3,

she omitted any discussion of "the amount of medical evidence supporting" their opinions, "the consistency of [their opinions] with the remaining medical evidence," or their specialties. *See Greek*, 802 F.3d at 375. Ignoring the *Burgess* factors before assigning weight to those treating opinions was procedural error. *See Estrella*, 925 F.3d at 95.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [the Court] that the substance of the rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight' to" these treating source opinions. *Id.*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32) (internal alterations omitted). And here, the record provides no good reason to discount the opinions of these treating physicians; on the contrary, there appears to be good reason to credit them.

For example, treatment notes indicating "mild to moderate degree of left sided foraminal stenosis" in the C2-C3 level discs and a "moderate to severe degree of left sided foraminal stenosis" at the C3-C4 level, Docket Item 7 at 420, among others, supported Dr. Cappuccino's opinion that Kelly suffered "an ongoing moderate degree of disability," *id.* at 423. Dr. Kaplan's opinion that Kelly suffered a "[m]oderate (50%)" permanent impairment, *see, e.g.*, *id.* at 430, was supported by "cervical disability index score[s]" between "34" and "68," cervical spine and thoracic spine restrictions ranging from twenty-five to fifty percent, and various restrictions in Kelly's range of motion. *See id.* at 425-72. Dr. Dave's opinion that Kelly suffered a "temporary impairment" of "33%"

---

2012) ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits.").

8

was supported by her assessment of thoracic spine pain and cervicalgia. *See, e.g.*, *id.* at 598. What is more, these opinions on Kelly's moderate impairment are roughly consistent with each other and were provided by physicians who had seen Kelly multiple times.[3]

In light of the ALJ's failure to "explicitly consider" the *Burgess* factors before assigning limited weight to the opinions of three of Kelly's treating sources, and because there are no apparent good reasons to support that assignment of weight, the ALJ violated the treating physician rule.[4] The matter therefore is remanded to the ALJ so that she can reconsider Kelly's claim for disability benefits consistent with the procedural mandates of the Act as interpreted by the Second Circuit.

---

[3] These treating opinions found "moderate," "50%," and "33%" impairments, Docket Item 7 at 152-54, and therefore may "lend further support to the finding that the claimant retains residual capability," *id.* at 154. But the possibility that these erroneously discounted opinions might lend support to the ALJ's decision does not render the error harmless because the ALJ must "connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported [her] RFC findings," lest the reviewing court be left "with many unanswered questions" and without "an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018). Here, the Court cannot be sure whether the ALJ relied on those opinions in determining Kelly's RFC or discounted them because of their "limited weight." In other words, the ALJ's failure to explicitly discuss the appropriate factors in assigning limited weight to these treating source opinions*, see Estrella*, 925 F.3d at 95-96, precludes meaningful judicial review.

[4] Because the "remaining issues ... may be affected by the ALJ's treatment of this case on remand," this Court does not reach them. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### III. CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, 17, is DENIED, and Kelly's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 26, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE